# 98 DTA 216

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ

ELEUTERIA SALAS HERNANDEZ
Demandante-Apelada

v.

ZETA ENTERPRISES, INC. REPRESENTADA POR EL INGENIERO LUIS FALTO
Demandado-Apelante

Núm. KLAN-98-00499

San Juan, Puerto Rico, a 21 de agosto de 1998

Panel integrado por su Presidente, Juez Rossy García
y los Jueces Martínez Torres y Rodríguez García

Rossy García, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

El recurso instado en el caso de epígrafe interesa la revocación de una sentencia emitida el 2 de abril de 1998 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (Ramón E. Febus Bernardini, J.). Mediante ésta dicho foro, luego de eliminar las alegaciones de la aquí apelante, Zeta Enterprises, anotarle la rebeldía, y proceder a la celebración de la vista del caso en rebeldía, declaró con lugar la demanda presentada en su contra por la Sra. Eleuteria Salas Hernández, la que fuera

instada al amparo de las disposiciones de la Ley Núm. 80 de mayo de 1976, 29 L. P.R.A. sec. 185a *et seq*. Al así dictaminar, juzgó que *"[el] despido de la [Sra. Salas] fue uno caprichoso e injustificado en violación del [referido estatuto]"*, en cuya virtud ordenó a Zeta Enterprises a satisfacer el pago de la mesada dispuesta por ley correspondiente a la cantidad de $1208 72, más una suma adicional de $399.00 por concepto de honorarios de abogado. ■

Notificada como fue dicha sentencia, la demandada Zeta, quien previo a la vista había presentado una moción solicitando la suspensión de la misma así como su transferencia, presentó ante la consideración del tribunal de instancia un escrito denominado *"Moción de Solicitud de Orden y de que [sic] se Dejen sin Efecto los Procedimientos"* en esencia una moción de reconsideración y relevo de sentencia- el que fue denegado de plano por inacción del tribunal. ■

Inconforme con dicho dictamen, la demandada interpuso en tiempo oportuno el recurso de apelación que nos ocupa en el que imputa, como único fundamento de revocación, que

*"[e]rró el Honorable Tribunal en la interpretación que realizó de el [sicl derecho aplicable ante los hechos el caso y aplicar la sanción más severa reconocida en derecho sin justificación legal para ello."* ■

Encontrándonos en condición de dictaminar luego de un análisis del recurso instado a la luz del derecho aplicable y su jurisprudencia interpretativa, resolvemos que resulta procedente emitir sentencia revocatoria de la apelada para ordenar la reinstalación de las alegaciones de la demandada-apelante y la continuación de los procedimientos.

## I

Los hechos pertinentes y el trámite procesal que dio base al dictamen apelado no están en controversia.

El litigio entre las partes comparecientes de epígrafe se remonta al año de 1994, en cuya ocasión la Sra. Eleuteria Salas Hernández (Sra. Salas), quien se desempeñaba como secretaria en el Proyecto Residencial Bernardina Villanueva, de la jurisdicción de Aguadilla, presentó una demanda contra Zeta Enterprises (Zeta) -compañía que para ese entonces administraba el referido residencial- en la que alegó que Zeta la despidió *"en forma caprichosa y sin justa causa"*, A tenor, solicitó los remedios contemplados en la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185a *et seq*., así como los honorarios de abogado que la misma autoriza. Dicho escrito fue enmendado en o alrededor del 22 de febrero de 1996 con el propósito de incluir un nuevo demandado que *"pudiera ser responsable a la demandante al pago del remedio solicitado"*. Notificada como fue de dicha acción, Zeta presentó su contestación a la misma en la que negó las alegaciones básicas atinentes al aducido despido injustificado. En oposición alegó, como defensa afirmativa, que el despido de la Sra. Salas obedeció al supuesto *"manejo indebido, impropio y negligente de fondos públicos"* que alegadamente participara dicha parte demandante.

Sin que resulte necesario referirnos a los incidentes que mediaron en el desarrollo procesal del caso con posterioridad a dicho evento y hasta la celebración de la conferencia con antelación al juicio -lo que ocurrió el 8 de diciembre de 1997- surge de los autos que en dicha ocasión se recibió y se discutió el informe preliminar entre abogados, ■ del cual se desprende que las partes coincidieron en que la controversia medular giraba en torno a si había mediado justa causa para el despido de la Sra. Salas. Luego de convenir las partes en una serie de estipulaciones que fueron consignadas en el referido informe, exponer sus respectivas teorías y anunciar la prueba testifical y documental que habrían de utilizar en ocasión de la vista en su fondo, ello según surge de la Minuta correspondiente a dicha vista, se señaló la vista en su fondo para el 31 de marzo de 1998. De otra parte, surge de la referida Minuta que en atención a la posible *"apropiación de fondos públicos y/o [sic] federales"*, el tribunal ordenó a Zeta juramentar el informe al respecto para que el mismo fuera referido a la fiscalía correspondiente *"para que investiguen a ver si hay alguna violacion"*. ■

En este estado los procedimientos, el 26 de marzo de 1998 la representación legal de la demandada-apelante, Lcdo. Angel S. Bonilla Rodríguez, sufrió una crisis relacionada a un padecimiento cardiaco el cual, a su vez, fue causado por un infarto a raíz del cual había tenido que

someterse previamente a una cirugía de corazón abierto. Según surge del escrito sometido por dicho letrado, cuando le ocurren estas crisis sus médicos le han informado que *"tiene que estar en completo reposo, no someterse a situaciones de tensión y de estrés pues le puede sobrevenir otro infarto"*. En atención a ello, y en vista de que la celebración del juicio en su fondo del caso de autos estaba pautada para el 31 de marzo, o sea, a cinco días del referido suceso, la secretaria del Lcdo. Bonilla, Sra. Myriam Vélez Román, según por ella atestado bajo juramento, se comunicó con la oficina del magistrado a cargo del caso, Hon. Febus Bernardini, así como con la representación legal de la demandante, Lcdo. Alberto L. Ramos Pérez --lo que pudo lograr al día siguiente-- para exponerle la situación por la que el Lcdo. Bonilla estaba atravesando.

Según surge de la declaración jurada que al respecto prestara la Sra. Vélez Román, la que transcribimos *in extenso*, lo acontecido en dicha ocasión fue como sigue:

## "DECLARACION JURADA

*YO; MYRIAM VELEZ ROMAN mayor de edad, casada, empleada y vecina de Lares, Puerto Rico bajo juramento declaro:*

*1. Que mi nombre y demás circunstancias personales son las antes expuestas.*

*2. Que el jueves 26 de marzo de 1998 recibí una llamada de la residencia del Lcdo. Angel S. Bonilla Rodríguez en la que informaba su esposa que el Lcdo. Bonilla se encontraba enfermo debido a su condición cardíaca y que al consultar con el médico éste le había indicado que tenía que estar en reposo absoluto lo que le impediría acudir a las vistas señaladas para las próximas semanas, que inmediatamente procedí a comunicarme con el Lcdo. Alberto L. Ramos Pérez a su oficina al teléfono 835-4201 y le dejé mensaje en la grabadora ya que no se encontraba, luego me comuniqué con la Secretaria del Honorable Juez, Ramón E. Febus, la señora o señorita María Del Carmen a quien le indiqué la situación por la que estaba pasando el Lcdo. Bonilla y ésta me manifestó que radicara la Moción solicitando la transferencia de vista y que luego que radicara la moción le dejara una copia en la Oficina del Honorable Juez Febus, que informó María Del Carmen que el Juez estaba en despacho pero que ella me llamaba al otro día y que creía que no hubiera ningún problema, que llamara el otro abogado y le informara lo que pasaba; más tarde trate de nuevo de hablar con el Lcdo. Ramos Pérez y me contestó una hija del Lcdo. y me dio un número de teléfono, el 398-8397, como él no estaba le dejé la información con la hija y le dije que era urgente que el Lcdo. Ramos se comunicara con la Oficina del Lcdo. Bonilla.*

*3. El 27 de marzo a las 9:19 de la mañana el Lcdo. Alberto Ramos se comunicó con la Oficina del Lcdo. Bonilla y me manifestó que si era por motivos de enfermedad el comprendía y que no tenía objeción que hacer a que transfirieran las vistas de los dos casos que estaban señalados uno para el 31 de marzo de 1998 y el otro para el 2 de abril de 1998, ambos casos son contra Zeta Enterprises, Inc. Sobre Despido Injustificado; el señalado para el 31 de marzo de 1998 era el de Eleuteria Salas Hernández, civil número: AICI94 01571 y el otro el de Gloria Hernández Cardona, civil número AICI95-00201, señalado para el 2 de abril de 1998; que en esos momentos él se dirigía hacia el Tribunal de Arecibo y no tenía el calendario a mano pero que cuanto llegara al Tribunal me llamaba más tarde para darme las fechas disponibles; lo que no hizo; tan pronto tuve el certificado médico le entregue las Mociones y las correspondientes copias a la esposa del Lcdo. Bonilla, la señora Gloria I. Pérez Colón, y ella las radicó personalmente en el Tribunal de Aguadilla y le entregó una copia de cada una de las Mociones a la Secretaria del Juez Febus (ver copias de la hoja de llamadas recibidas y de las anotaciones relativas a las gestiones que se hicieron para comunicarnos con el Lcdo. Ramos y con la oficina del Juez Febus).* ■

*4. Que todo lo antes expuesto en esta declaración jurada es la verdad y nada más que la verdad y los hechos son ciertos y verdaderos y me constan de mi propio y personal conocimiento.*

*5. Que hago esta declaración jurada a todos los fines de ley pertinentes.*

*(Fdo.)_____*

*MYRIAM VELEZ ROMAN"* ■

En consideración a su condición de salud y realizadas las diligencias antes expuestas, asumiendo que el foro de instancia habría de impartirle su aprobación a la moción de suspensión antes referida, ni el Lcdo. Bonilla ni su representado comparecieron a la vista en su fondo del caso de epígrafe.

Surge de los autos que el foro de instancia nunca dispuso de la referida moción previo a la vista señalada cuya suspensión y transferencia se pretendió lograr mediante su oportuna presentación el día 27 de marzo de 1998. De otra parte, se desprende de la Minuta correspondiente a la vista señalada para el 31 de marzo de 1998, que en ocasión de la misma compareció la representación legal de la querellante, quien indicó al tribunal que había expresado a la secretaria del Lcdo. Bonilla que no tenía objeción a un aplazamiento de vista *"siempre y cuando existiera justa causa y el tribunal así lo acogiera".* No obstante, el foro de instancia, expresando que *"si está enfermo, que venga aquí y por lo menos que si fue a la oficina a escribir este escrito, puede venir aquí a dar el frente",* dispuso la eliminación de las alegaciones de la parte querellada; le anotó la rebeldía por tal incomparecencia; procedió a recibir la prueba de la querellante; y emitió luego la sentencia en rebeldía que es ahora objeto de impugnación. Por la naturaleza de dicho dictamen transcribimos a continuación, *in toto,* el contenido de la Minuta correspondiente a la referida vista:

*"Llamado el caso para Juicio en su Fondo, compareció la parte Demandante; su representación legal, Lcdo. Alberto Luis Ramos Pérez, no estuvo presente. El Lcdo. Angel S. Bonilla Rodríguez'no estuvo presente ni representante alguno de la parte Demandada."*

*Así las cosas, el Honorable Tribunal dio un turno posterior.*

*Llamado el caso en segunda instancia, compareció el Lcdo. Ramos representando legalmente a la parte Demandante, quien estaba presente. El Lcdo. Bonilla no compareció ni representante alguno por la parte Demandada.*

*Indicó el Tribunal que hay un escrito de solicitud de transferencia de vista radicado el día 27 de marzo de 1998 para vista el 31 de marzo de 1998 radicado por el Lcdo. Angel S. Bonilla Rodríguez informando que fue intervenido el pasado año de cirugía de corazón abierto, que al presente está en crisis y por instrucciones médicas no puede trabajar por un período de 15 días.*

*Manifestó el Tribunal que esto es un caso del año 1994 de despido injustificado, que es un caso sumario y todavía en el 1998 no se ha visto.* ■ *Que es un caso heredado y entonces hoy no comparece ni el demandado ni su representación legal. Se radica el escrito, no viene, ni su representado tampoco y entonces la bola está en la cancha del Juez. Que entonces el Juez es el que es malo y severo. Que no es fácil ser justo, pero que es bueno que el Pueblo oiga lo que está pasando y los abogados también se enteren para que después sepan porqué [sic] es que el Juez actúa como actúa y esta persona también fue Juez y conoce que debe dar el ejemplo. Que si está enfermo, que venga aquí y por lo menos que si fue a la oficina a escribir este escrito, puede venir aquí a dar el frente.* ■ *Preguntó el Tribunal al Lcdo. Ramos, cuál es su solicitud.*

*El Lcdo. Ramos expresó que como ha manifestado el Tribunal, el caso es del 1994, ha comparecido con su cliente y la prueba. Que recibió llamada de la Secretaria del compañero el pasado viernes y que su manifestación fue que siempre y cuando existiera justa causa y el Tribunal así lo acogiera, no tenía objeción en ese sentido. Que entiende que alta presión es un asunto que lo mismo puede ser hoy que mañana. Solicitó del Tribunal que dicte Rebeldía o un remedio. Que el compañero señaló unas vistas para el mes de julio, que eso es más de 90 días y su cliente no puede seguir esperando. Que el caso fue al Tribunal Apelativo.*

*Informó el Tribunal que eso es otra situación. Que el Tribunal Apelativo dijo que el escrito fue frívolo para tratar de paralizar esta situación y todas esas situaciones están envueltas en este caso.*

*Mencionó el Lcdo. Ramos que este caso es una reclamación de Ley 80 y la mesada no llega a $1,500.*

*Dispuso el Tribunal eliminar las alegaciones y anotar la rebeldía ante la incomparecencia de la parte demandada y su abogado después de haber radicado éste una moción solicitando transferencia el día 27 de marzo de 1998 para vista del 31 de marzo de 1998, siendo un caso bajo la Ley 80 y habiendo estado este caso en diferentes salas desde el año 1994.*

*A preguntas del Tribunal, el Lcdo. Ramos comunicó estar preparado para el caso.*

*Se procedió entonces a juramentar la prueba del caso.*

*Se comenzó con el testimonio de Eleuteria Salas Hernández, quien fue interrogada por el Lcdo. Ramos.*

*Se continuó luego con el testimonio de Gloria Hernández Cardona, quien fue interrogada por el Lcdo. Ramos y por el Honorable Tribunal.*

*Habiendo terminado con los testimonios de los testigos, el Lcdo. Ramos solicitó que se acepten como EXHIBITS una serie de documentos anexados en el expediente.*

*Solicitó el Tribunal al Lcdo. Ramos que traiga el Proyecto de Sentencia para el viernes próximo, 03 de abril de 1998.*

*Pendiente de Proyecto"* ▮

Fue en tales circunstancias que el tribunal de instancia emitió la sentencia ahora apelada en la que, luego de consignar que *"se declara sin lugar la moción solicitando la transferencia de la vista presentada por el Lcdo. Bonilla Rodríguez y se ordena la eliminación de las alegaciones de la parte demandada, por su incomparecencia y ordena la anotación de la rebeldía"*, declaró con lugar la demanda instada concediendo el remedio peticionado por la querellante. Resolvemos que, al así dictaminar, incidió.

## II

En nuestra jurisdicción priva el principio de que en la tramitación de toda acción civil el procedimiento debe estar orientado hacia la consecución del objetivo de que prevalezca el propósito de hallar la verdad y hacer justicia a las partes, razón por la cual todo nuestro ordenamiento procesal debe interpretarse de forma tal que permita viabilizar ese propósito, no obstaculizarlo. Autoridad de Comunicaciones, 110 D.P.R. 879, 884 (1981). En perfecta armonía con dicha norma, nuestro más alto foro ha señalado que los tribunales de instancia deben establecer un fino balance entre el interés de que los pleitos se resuelvan en sus méritos y el interés en evitar congestión en el calendario y demoras innecesarias en el trámite judicial, *Díaz v. Tribunal Superior*, 93 D.P.R. 79, 87 (1966); *Fine Art Wallpaper v. Wolff*, 102 D.P.R. 451, 458 (1974), reiterando que la rapidez debe ceder ante la justicia. José A. Cuevas Segarra, *Práctica Procesal Puertorriqueña*, Vol. II, **Publicaciones J.T.S.**, San Juan (1979), Cap. 2, pág. 58. Debemos aquí también tener presente, por la naturaleza de la acción instada por la demandante apelada, que si bien en todo procedimiento sobre reclamación de salarios tramitado al amparo de las disposiciones de la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. secs. 3118 a 3132, *"se aplicaran las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de [la referida ley] o con el carácter sumario del procedimiento"*, 32 L.P.R.A. sec. 3120, en el caso que nos ocupa la demandante optó por tramitar su acción siguiendo el curso ordinario de los procedimientos, lo que explica el trámite habido previo al señalamiento de la vista en su fondo que dio base al dictamen apelado.

Dirigiendo nuestra atención a la Regla 8.4(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 8.4 (b), cuyas disposiciones nos proveen, en principio, la base para la consideración del dictamen que es ahora objeto de impugnación, a la luz del marco de referencia antes expuesto dispone ésta que:

*"[t]oda moción de suspensión o transferencia de vista antes del juicio se hará por escrito y en la misma se expondrán los fundamentos para tal solicitud. Sólo podrá formularse una solicitud de suspensión verbalmente el día de la vista, fundada en circunstancias extraordinarias no anticipables y fuera del control de las partes o de sus abogados. Si de la faz de la solicitud surgiere causa*

*justificada para la suspensión, el juez emitirá una resolución escrita en la que expresará los fundamentos para la concesión de la suspensión o transferencia, copia de la cual será enviada al Juez Administrador.*

*Cualquier estipulación para suspender una vista, requerirá la aprobación del juez que preside la sala. Regla 8.4(b) de las de Procedimiento Civil, supra, R. 8.4(b)."*

Como claramente surge de su ponderada lectura, la transcrita regla *"está orientada hacia el principio de la rápida terminación de los pleitos, y la protección a las partes y los testigos del abuso de los procedimientos".* José Á. Cuevas Segarra, *supra*, pág. 58. Así, su concesión permanece en la sana discreción del tribunal.

En el proceso de orientar a los foros de instancia al momento de pasar juicio sobre la procedencia de una solicitud de suspensión de vista, el Tribunal Supremo ha esbozado una serie de criterios, los que deben ser considerados cuando ejercitan la discreción que se les reconoce en la Regla 8.4 (b), *supra*, a saber: (a) la fecha de presentación del caso, si este es reciente o ha estado pendiente por largo tiempo; (b) el trámite seguido en el mismo, si han habido suspensiones anteriores y las causas de las mismas; (c) las objeciones de la parte adversa, especialmente cómo le afecta la suspensión y los gastos en que ha incurrido para traer ante el tribunal su prueba; y (d) las razones que se aducen para la suspensión solicitada. *Fine Art Wallpaper v. Wolff, supra*, págs. 456-457. La evaluación del conjunto de estos factores permitirá al juzgador de hechos hacer una determinación razonable sobre la solicitud de suspensión que pende ante su consideración, recordando siempre su obligación de controlar los procedimientos con firmeza a fin de evitar la congestión y demoras indebidas. *Id.*, pág. 457.

De otra parte, es norma clara que, cuando un demandado ha dejado de comparecer a un señalamiento sin que surjan del expediente razones o motivos que justifiquen o expliquen tal incomparecencia, lo que no es la situación en el caso que nos ocupa, el tribunal debe continuar con los procedimientos y dictar sentencia como corresponda, *Fine Art Wallpaper v. Wolff, supra*, pág. 457; *Importadora Vilca, Inc. v. Hogares Crea, Inc.*, 118 D.P.R. 679, 685 (1987) (enfasis nuestro), sin que ello constituya impedimento para atender y considerar posteriormente una moción de relevo de sentencia u orden. Ahora bien, en la ponderación de la causa aducida para justificar una solicitud de suspensión de vista, armonizando los foros de instancia los intereses en conflicto, se ha reconocido, además, que la imposición de sanciones para beneficio de la otra parte o del Estado, o ambos, en sus distintas modalidades, *"representa la solución judicial al eterno conflicto en que se debaten dos legítimos intereses: el procesamiento rápido y económico de las controversias frente a una adjudicación justa, preferiblemente en sus méritos".* Importadora Vilca, Inc. v. Hogares Crea, Inc., supra*, pág. 687.

Al examinar la situación particular que nos ocupa a la luz de los principios antes reseñados, forzoso resulta concluir que el foro de instancia abusó de su discreción e incidió al disponer la eliminación de las alegaciones de la demandada-apelante, Zeta, para proceder a la celebración de una vista en rebeldía y emitir luego la sentencia ahora apelada. También incidió al negarse posteriormente a reconsiderar su dictamen para relevarla de los efectos de la misma. Veamos.

Primeramente, evidente resulta que no nos encontramos frente a una conducta constitutiva de demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia que amerite la imposición de sanciones que autoriza la Regla 44.2 de Procedimiento Civil, *supra*, R. 44.2, y mucho menos frente a un comportamiento que conlleve la sanción drástica que aplicó el foro de instancia. Según surge de los autos, luego de los trámites procesales de rigor y de la celebración de una conferencia con antelación al juicio, la que se celebró el 8 de diciembre de 1997, se señaló la vista del caso en su fondo para el 31 de marzo de 1996, a las 2:00 p.m. En tal estado los procedimientos, se suscitó la crisis en la condición de salud del Lcdo. Bonilla descrita por éste, y a la que hemos hecho referencia, por lo cual le fue prescrito por su médico un período de descanso de dos semanas. Obviamente, tal situación de salud, conflictiva con el señalamiento pautado por el tribunal de instancia, surgió por causas ajenas a la voluntad del Lcdo. Bonilla, lo cual debió haber pesado considerablemente sobre el ánimo de dicho foro al ponderar la concesión de la moción de suspensión que a los efectos presentó dicho letrado.

De otra parte, debió haber considerado el foro de instancia que si bien la demanda de epígrafe fue instada en algún momento posterior al despido de la Sra. Salas, lo que ocurrió en agosto de 1994, se desprende de los autos ante nos que la misma fue enmendada en febrero de 1996, habiéndose señalado la vista en su fondo para el 31 de marzo de 1998, ello luego de los trámites procesales pertinentes y la celebración de una conferencia con antelación a juicio que se efectuó el 8 de diciembre de 1997. █ De otra parte, el Informe de Conferencia con Antelación a Juicio sometido por las partes el 1ro. de diciembre de 1997 refleja total diligencia de las partes en la tramitación del caso y el interés de las partes en proteger sus respectivos intereses, utilizando a tales efectos los recursos procesales que tenían disponibles en contemplación a la vista en su fondo. Debe aquí tenerse presente, además, que si bien el caso versa sobre una reclamación laboral, del expediente se desprende, según ya indicado, que para su tramitación la demandante no se acogió al trámite sumario para tales reclamaciones. No existe base, pues, para imputar a la parte demandada-apelante, conducta constitutiva de abandono u obstrucción en perjuicio de la eficiente tramitación y disposición del referido caso.

Factor a considerarse, además, es que se trataba de un primer señalamiento de vista en su fondo, cuya suspensión fue solicitada con diligencia y mediando causa justificada, según acreditado mediante una certificación médica. No se encontraba así el foro de instancia ante un caso de incomparecencia injustificada de la parte aquí apelante como base para el curso de acción adoptado. Elemento adicional lo constituye el hecho de que, previo al momento de la vista, la representación legal de la demandante no ofreció oposición alguna a la solicitud de suspensión promovida por Zeta. A tenor, le informó a la secretaria del Lcdo. Bonilla *"que si era por motivos de enfermedad él comprendía y que no tenía objeción que hacer a que transfirieran las vistas de los dos casos que estaban señalados [...] contra Zeta Enterprises, Inc.".* Como indicaramos con anterioridad, su anuencia le fue participada al tribunal *a quo* mediante la inclusión de fechas alternas en la moción que presentara al respecto Zeta, para que dicho foro reseñalara la vista conforme a su mejor conveniencia. Así, surge del expediente ante nos que las objeciones del Lcdo. Ramos, y la solicitud de remedios peticionada en corte abierta, fueron levantadas aun luego de manifestar que *"siempre y cuando existiera justa causa y el Tribunal así lo acogiera, no tenía objeción en ese sentido [de suspender la vista]".*

Finalmente, resultan en principio meritorias las razones aducidas para la suspensión solicitada: una recaída imprevista en el padecimiento cardíaco del Lcdo. Bonilla, la que tuvo el efecto de que se le recomendara *"estar en completo reposo, no someterse a situaciones de tensión y de estrés pues le puede sobrevenir otro infarto",* extremo que acreditó mediante la correspondiente certificación médica. A tenor, constituye un ejercicio arbitrario de discreción haberlas desmerecido sin la celebración de una vista previa, máxime en circunstancias donde el Lcdo. Bonilla, en el descargo de su responsabilidad y deber profesional para con su representado, el foro de instancia y la parte querellante, con total diligencia realizó gestiones para comunicarse con la oficina del magistrado a cargo del caso y con el Lcdo. Ramos, representación legal de la Sra. Salas, para informarle la situación y coordinar fechas alternas para la celebración de la vista. En tales circunstancias, la presentación de la referida moción cuatro (4) días antes de la fecha señalada para la vista, fue oportuna y cumple con las exigencias de la Regla 8.4(b) de Procedimiento Civil, *supra*

De otra parte, los fundamentos expuestos por la apelante Zeta para solicitar la suspensión y transferencia de la vista en cuestión son meritorios, y sopesados en conjunto los factores que deben ser considerados en la determinación de la procedencia de la referida moción, evidente resulta que abusó de su discreción el foro de instancia al denegar la misma para ordenar la eliminación de sus alegaciones y la celebración de una vista en rebeldía, para emitir luego la sentencia que es ahora objeto de impugnación. Resolvemos, en consecuencia, que tal dictamen, con el alcance de privar a un litigante de su día en corte, violentando la norma firmemente establecida que dicta que tales sanciones deben proceder tan sólo como último recurso cuando queda probado que otras sanciones resultan ineficaces y que la conducta sancionable denota un patente desinterés, abandono u obstrucción en la tramitación del pleito, en perjuicio de la más eficiente administración de la justicia, *Amaro González v. First Federal,* 134 D.P.R ___ (1993), **93 J.T.S. 46**, pág, 10545; *Mercado Del Valle v. Panthers,* 125 D.P.R. 98 (1990); *Echevarría v. Sucn. Pérez Meri,* 123 D P.R 664; *Maldonado v. Secretario,* 113 D.P.R. 494, 498; *Garriga Gordils v. Maldonado,* 109 D P.R. 817, 822 (1980), no puede prevalecer.

### III
Por los fundamentos antes expuestos se dicta sentencia revocatoria de la apelada. En consecuencia,

se ordena la reinstalación de las alegaciones de la parte demandada y la continuación de los procedimientos en forma compatible con lo aquí resuelto.

Lo acuerda y manda el Tribunal y así lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 98 DTA 216

1. Véase Sentencia. Apéndice del recurso. págs. 2-3.

2. Véase la misma a la pág. 33 del Apéndice del recurso.

3. Véase Escrito de Apelación, págs. 4-5.

4. Dicho informe que recogiera las incidencias de la conferencia preliminar entre abogados lleva fecha de 1 de diciembre de 1997. Véase el mismo a la pág. 11 del Apéndice del recurso.

5. Véase Minuta de 8 de diciembre de 1997. 1997. Apéndice del recurso. págs. 21-22.

6. Véase Declaración jurada, Apéndice del recurso. pág. 27.

7. *Id.*, págs. 27-28.

8. De la demanda incoada por la Sra. Salas no surge que la misma se hubiese acogido al procedimiento sumario ni que éste fuera tramitado siguiendo sus especificaciones. Además de ello, surge que dicha parte presentó una demanda enmendada dos años más tarde, o sea, en el 1996.

9. De los autos no surge que el Lcdo. Bonilla hubiese ido a su oficina a preparar el referido escrito de suspensión y transferencia. Mas bien parece ser que su secretaria lo preparó, su esposa lo recogió en la oficina para que el Lcdo. Bonilla lo firmara en su casa, y de ahí fue presentado en la Secretaría del Tribunal. Véase Declaración jurada de Myriam Vélez Román, Apéndice del recurso, pág. 27.

10. Véase Minuta de 31 de marzo de 1998, Apéndice del recurso, págs. 57.

11. Véase Minuta correspondiente a la vista efectuada el 8 de diciembre de 1997, Apéndice del recurso, págs. 21-22.